IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )  Crim. No. 1:19-cr-148 |
| | |
| PRAKAZREL MICHEL, | Case No. 23-mc-32 |
| LOW TAEK JHO | Assigned To: Unassigned Judge |
| | Date Assigned: 4/3/2023 |
| | Description: MISC. |

### UNITED STATES' MOTION FOR ORDER TO SHOW CAUSE

A month before trial, in direct violation of the Court's Protective Order, defense counsel has provided government discovery—including grand jury material—to reporters for Bloomberg for publication in two defense-oriented articles.  One of the articles publishes a photo bearing a grand jury exhibit sticker that matches the copy provided to the defense in discovery; the same article quotes grand jury witness testimony provided to the defendant in discovery; and numerous facts in both articles are sourced from internal investigative reports and communications provided to the defendant in discovery.  Throughout the feature article, the defendant and defense counsel are cited heavily for the content.

This attempt to influence the jury pool shortly before trial by selectively disclosing discovery and narrating an extrajudicial defense to the media violates the Protective Order.  The Order prohibits disclosure of any discovery to anyone other than the defendant, counsel, witnesses, or vendors involved in preparation of the defense and provides that discovery material shall not be used for "any other purpose whatsoever."  ECF No. 8 at 2.  Sending discovery to reporters is a willful violation of the Court's Order.  The government moves the Court to enter an Order to Show Cause for contempt under Federal Rule of Criminal Procedure 42 based on defense counsel's flagrant violation of the Protective Order.

## BACKGROUND

### I.      The Charges

Among other charges, the Superseding Indictment alleges that between approximately May and November 2012, Michel, Low, and others agreed to use Low's money to make illegal foreign and conduit contributions to political committees supporting a candidate for the Office of the President of the United States. Superseding Indictment, ECF No. 84 at ¶¶ 36-67. The purpose of the contributions was, in part, to secure access to the candidate at fundraising events. *Id.* The Superseding Indictment quotes extensively from the defendant's and his co-conspirators' communications regarding wire transfers, political contributions, fundraising events, and access to the presidential candidate. *See, e.g., id.* at ¶ 54.

The Superseding Indictment also alleges that between approximately March 2017 and January 2018, Michel secretly agreed with Low "to lobby the Administration and DOJ to drop the investigation of LOW for his role in the embezzlement of billions of dollars from 1MDB" and "to act in the United States as agents of PRC Minister A . . . to arrange for the removal and return of . . . a dissident of the PRC living in the United States," all in exchange for millions of dollars and in violation of the Foreign Agents Registration Act and 18 U.S.C. § 951. *Id.* at ¶¶ 99-100. As part of this scheme, Michel, Low, and others concealed from the U.S. government that Elliott Broidy, the Deputy Finance Chair of the President's political party, "was acting on behalf of LOW," and concealed "the agreement to operate within the United States subject to the direction of PRC Minister A and the PRC Government." *Id.* Michel, Low and their co-conspirators used international wire transfers directed by Low to fund the scheme and engaged in financial transactions with the proceeds of the scheme to conceal the true source and purpose of the funds. *Id.* at ¶¶ 109-10. The Superseding Indictment quotes extensively from communications among

Case 1:23-mc-00032-UNA   Document 1   Filed 04/03/23   Page 3 of 9

the co-conspirators regarding the payments from Low and the illegal influence campaign waged on Low's behalf. *See id.* at ¶¶ 118-49.

Lastly, the Superseding Indictment alleges that between March 2017 through January 2018, the defendant agreed with a co-conspirator, George Higginbotham, "to funnel millions of dollars from foreign bank accounts into United States bank accounts controlled by MICHEL by misrepresenting to financial institutions the source and purpose of the funds." *Id.* at ¶ 160. The defendant is alleged to have used shell companies and sham contracts to illegally conceal Low as the source of the international transfers and to hide from financial institutions that the purpose of the money was to fund the unregistered lobbying campaign.

## II.    The Protective Order & Discovery

On May 14, 2019, the Court granted the government's Motion for a Protective Order, ECF No. 7, and entered a Protective Order, ECF No. 8. The Order prohibits disclosure of discovery to anyone other than "(i) the defendant; (ii) the defendant's attorney . . .; (iii) employees or agents of those attorneys; (iv) witnesses . . .; and (v) translators, third-party service providers, consultants, experts, or investigators assisting in . . . this case." ECF No. 8 at ¶ 1. The Order specifically provides: "The defendant [and] defendant's attorneys of record . . . shall not disseminate copies of the discovery material or allow copies of any kind to be made by any other person." *Id.* The Order also limits the use of discovery to "preparation, trial, direct appeal (if any), and collateral attack (if any) of this case and for no other purpose whatsoever." *Id.* at ¶ 2. Finally, the Order provides for "enforcement" through "sanctions or contempt." *Id.* at ¶ 6.

On July 12, 2021, current counsel of record, David Kenner, filed a Motion for Leave to Appear Pro Hac Vice, ECF No. 88, and the Motion was granted the same day. Between July 13, 2021, and the date of this filing, the government provided sixteen discovery productions to defense

counsel, and every production included a cover letter providing that "[a]ll of the materials provided here are subject to the Protective Order entered by the Court in this case on May 14, 2019."

### III.   The Bloomberg Articles

On March 2, 2023, Bloomberg published two related articles: (1) "The Fugee, the Fugitive, and the FBI: How rapper Pras Michél got entangled in one of the century's great financial scandals, mediated a high-stakes negotiations between global superpowers and was accused of major crimes," ("The Feature Article") Gov. Ex. A.; and (2) "FBI Documents Show Leonardo DiCaprio, Kim Kardashian Grilled for 1MDB Secrets: Inside the US government's effort to unravel a giant financial fraud, with some help from the celebrities who got paintings and bags of cash via a friendly future fugitive named Jho Low," ("The DiCaprio Article") Gov. Ex. B.

The Feature Article details Michel's conduct, largely from Michel's perspective, and incorporates defense themes of innocent alternative explanations for his dealings with Low, government targeting, disproportionate punishment, and vindictive prosecution, many of which have already been rejected by this Court in pretrial litigation. *See, e.g.*, Order, ECF No. 184. The Feature Article quotes or cites defense counsel eight times and includes two photographs of Michel with Presidents Biden and Clinton which were provided to the government by defense counsel as reciprocal discovery approximately seven hours before the Feature Article was published. Gov. Ex. A at 14, 16.

The Feature Article refers to "a cache of previously undisclosed FBI and Justice Department documents," as providing much of the content for the story. *Id.* at 5. The Feature Article includes a photo presented to the grand jury in this investigation depicting one of the political fundraising events at issue in the 2012 conspiracy, complete with the government's grand jury sticker. *Id.* at 15. The Feature Article also quotes the transcript of Higginbotham's grand jury

4

testimony, *id.* at 20; cites "internal government documents" to describe statements from Steve Wynn, *id.*; cites a DOJ interview report of John Kelly, *id.* at 21; and quotes internal communications of FBI Special Agent Robert Heuchling, provided to the defense in a *Jencks* production, *id.* at 26. While these specific materials are non-public and have only been produced in discovery to this defendant, the Feature Article also quotes and cites numerous publicly filed documents in this and related cases.

The DiCaprio Article focuses on the purported limited recollection of potential government witness Leonard DiCaprio regarding his dealings with Low. Gov. Ex. B. at 2-3. The article then provides a full redacted copy of the FBI FD-302 interview report of DiCaprio, provided to the defendant in discovery, *id.* at 5 (the entire 302 is available in the online version of the article); quotes from the FBI FD-302 of Kim Kardashian regarding her dealings with Low, provided to the defendant in discovery, *id.* at 5-7; quotes from the transcript of DiCaprio's grand jury testimony, provided to the defendant in discovery, *id.* at 8; and again quotes from internal communications from Special Agent Heuchling, provided to the defense in a *Jencks* production, *id.* at 7.

## ARGUMENT

In a show of gamesmanship seeking to influence public opinion and bias potential jurors in favor of the defendant, the defense has disclosed for publication swaths of sensitive internal government records, including grand jury exhibits and testimony. This blatant violation of the Court's Protective Order constitutes contempt and warrants an Order to Show Cause notifying defense counsel of sanctions or potential prosecution.

18 U.S.C. Section 401 provides authority for a court to punish contempt in the form of, *inter alia*, "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." Contempt under this subsection requires that "the alleged contemnor [] disobey or

5

resist a lawful . . . order . . . of the court," and that "the disobedience [] be willful." *In re Levine*, 27 F.3d 594, 595 (D.C. Cir. 1994) (internal quotation marks omitted). The order must be "sufficiently clear and unequivocal at the time it is issued" and "only the least possible power adequate to the end proposed should be used in contempt cases." *In re Holloway*, 995 F.2d 1080, 1087 (D.C. Cir. 1993) (internal quotation marks and citations omitted).[1]

The Protective Order is clear and unequivocal in limiting disclosure of discovery to the defendant, counsel, witnesses, or third parties assisting in case preparation:

> Any and all discovery material the United States produces to the defendant in discovery shall be reviewed by only (i) the defendant; (ii) the defendant's attorney or attorneys of record in this case; (iii) employees or agents of those attorneys; (iv) witnesses or potential witnesses other than co-defendants, their counsel, or employees or agents of those attorneys; and (v) translators, third-party service providers, consultants, experts, or investigators assisting in the preparation, trial, direct appeal (if any), and collateral attack (if any) of this case.

Protective Order, ECF No. 8, at ¶ 1. The Order further specifically limits the purpose for which discovery may be used to preparation for trial or related proceedings: "[t]he defendant shall use discovery material and its contents solely for the preparation, trial, direct appeal (if any), and collateral attack (if any) of this case and for no other purpose whatsoever." *Id.* at ¶ 2. The Order plainly prohibits providing discovery to third parties who are not witnesses or working for the defense and prohibits use of the discovery materials for any purpose other than case preparation. Providing discovery to reporters for publication is a clear violation of the Order.

---

[1] Federal Rule of Criminal Procedure 42 provides that any person who commits criminal contempt may be punished after the court provides "notice in open court, in an order to show cause, or in an arrest order," and further provides that the notice must: "(A) state the time and place of the trial; (B) allow the defendant a reasonable time to prepare a defense; and (C) state the essential facts constituting the charged criminal contempt and describe it as such." Fed. R. Crim. P. 42(a)(1)(A). Contempt involving "disobedience of any lawful . . . order . . . entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States" may be tried by the court rather than by a jury. 18 U.S.C. §§ 402, 3691.

Defense counsel was reminded of this Order sixteen times between his initial appearance as counsel of record in this matter and the date of this filing. His disclosure of discovery to Bloomberg was intended to promote the shaping and publication of articles favorable to the defendant and critical of government witnesses and the investigation and prosecution of this case. The "disobedience" of the Protective Order was willful. *See, e.g., United States v. Schulte*, 578 F. Supp. 3d 596, 618 (S.D.N.Y 2021) (finding willful violation of a clear order where "the Protective Order was clear that materials designated under it may be disclosed . . . to a delineated list of individuals which did not include reporters" and where the defendant "emailed a copy of a search warrant affidavit stamped as subject to the Protective Order to a reporter to convince the reporter to write about his case").

## CONCLUSION

Defense counsel provided extensive discovery materials including interview reports, grand jury transcripts, grand jury exhibits, and internal FBI communications to reporters so that they would publish stories amplifying defense theories and criticizing the prosecution and government witnesses. This conduct should be beneath an officer of the court and clearly violates the Court's Protective Order. The disclosure may result in harassment or intimidation of government witnesses—in a case in which witness tampering is among the charges—and may compromise ongoing related cases and investigations. The Court should issue an Order to Show Cause notifying defense counsel of the contempt charge and setting a bench trial to resolve the matter.

Respectfully submitted,

COREY R. AMUNDSON
Chief, Public Integrity Section
Criminal Division
U.S. Department of Justice

By: */s/ John D. Keller*
    John D. Keller
    Principal Deputy Chief

    Sean F. Mulryne
    Director of Enforcement & Litigation
    Election Crimes Branch

    Nicole Lockhart
    Trial Attorney
    1301 New York Ave., NW
    Washington, DC 20530
    Telephone: 202-514-1412
    Facsimile: 202-514-3003
    john.keller2@usdoj.gov
    sean.mulryne@usdoj.gov
    nicole.lockhart@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will serve counsel for the Defendant via electronic notification.


Dated: March 3, 2023                                   /s/ John D. Keller
                                                       John D. Keller